1   Jason S. Hartley, CA Bar No. 192514
2   **STUEVE SIEGEL HANSON LLP**
    550 West C Street, Suite 1750
3   San Diego, California 92101
    Email: hartley@stuevesiegel.com
4   Telephone:  619-400-5822
5   Facsimile:  619-400-5832

6   George A. Hanson, *Pro Hac Vice Forthcoming*
    **STUEVE SIEGEL HANSON LLP**
7   460 Nichols Road, Suite 200
8   Kansas City, Missouri 64112
    Email:  hanson@stuevesiegel.com
9   Telephone:  816-714-7100
10  Facsimile:  816-714-7101

11  Attorneys for Plaintiffs

12          **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
13                      **WESTERN DIVISION**

14

15  **GEORGE SCHMIDT, JR.,**          Case No.
    **TIMOTHY HANGGI, DAN**           CV13-8129 JAK-JC
16  **BENJEGERDES, ROBERT**
17  **KIEKBUSCH, JR., JAMES NORD,**   **COMPLAINT**
    **MITCHELL FINWALL, DYLAN**
18  **MONROE, JOHN KOZIOL,**          **1. Violation of FLSA (29 U.S.C. § 201**
19  **LAWRENCE KLIMEK, TANNER**       *et seq.*)
    **PORISCH, and NEILL JERRY,**     **2. Misrepresentation of Employment**
20                                    **Relationship** (Minn. Stat. Ann. §
21              **Plaintiffs,**       181.722)

22  v.                                **DEMAND FOR JURY TRIAL**

23
    **DIRECTV, INC., DIRECTV, LLC,**
24  **and DIRECTSAT USA, LLC,**

25
                **Defendants.**
26

27

28

FILED
CLERK, U.S. DISTRICT COURT
NOV - 1 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

RECEIVED
CLERK, U.S. DISTRICT COURT
NOV - 1 2013
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

# COMPLAINT

Plaintiffs George Schmidt Jr., Timothy Hanggi, Dan Benjegerdes, Robert Kiekbusch Jr., James Nord, Mitchell Finwall, Dylan Monroe, John Koziol, Lawrence Klimek, Tanner Porisch, and Neill Jerry, by and through their undersigned counsel, for their individual complaints against DIRECTV, Inc. and DIRECTV LLC (together, "DIRECTV") and DirectSat USA, LLC ("DirectSat") (collectively with DIRECTV, "Defendants"); hereby state as follows:

1.    Plaintiffs worked as satellite installation and repair technicians for Defendants.

2.    Defendants paid Plaintiffs on a per-task basis that did not properly compensate them for all hours worked in an effort to deliberately deny them earned wages and overtime compensation in violation of the Fair Labor Standards Act ("FLSA") and state law.

## JURISDICTION AND VENUE

3.    The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. Jurisdiction over Plaintiffs' FLSA claims is based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. Jurisdiction over Plaintiffs' state law claims is based upon 28 U.S.C. § 1367.

4.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant DIRECTV is deemed a resident of the Central District of California and DirectSat is each subject to personal jurisdiction in this District. Venue in the Western Division of the Central District of California is proper because defendant DIRECTV maintains an office in the Western Division of this Court and a substantial part of the events giving rise to this claim occurred in and emanated from this Division. Further, upon information and belief, Defendants have each consented to personal jurisdiction and venue in the Central District of California for the claims alleged herein.

## PARTIES

### Defendants

**DIRECTV**

5.     DIRECTV, Inc. is a Delaware corporation with its principal place of business in El Segundo, California. DIRECTV, Inc. does business as DIRECTV Home Services in the State of California and nationwide.

6.     In December 2011, DIRECTV, Inc. merged with another DIRECTV entity, DIRECTV Operations, LLC. The resulting entity is known as DIRECTV, LLC, which is a Delaware corporation with its principal place of business in El Segundo, California.

7.     All Plaintiffs were each jointly employed by and bring their individual claims against defendant DIRECTV.

**DirectSat USA, LLC**

8.     DirectSat is a Delaware limited liability company with its principal place of business in King of Prussia, Pennsylvania. DirectSat does business in Delaware, Minnesota, and nationwide.

9.     All Plaintiffs were each jointly employed by DirectSat and bring their individual claims against it.

### Agreements Between DIRECTV and DirectSat

10.     DIRECTV uses a contract to govern the terms and conditions of its business relationship with DirectSat.

11.     Under the terms of that contract, DirectSat must indemnify DIRECTV for any liability arising out of this lawsuit.

12.     DIRECTV's contract with DirectSat also provides that in the event of any legal action involving the contract, the exclusive venue shall be where DIRECTV's corporate headquarters is located, which is California.

3

COMPLAINT

1    13.   Under this contract, DirectSat agreed to submit itself to the exclusive

2  personal jurisdiction of the federal and state courts of the State of California.

3    14.   Upon information and belief, at all relevant times, DIRECTV was the

4  primary, if not the only, client of DirectSat and was the source of substantially all

5  DirectSat's income.

6                                **Plaintiffs**

7    15.   With the exceptions noted herein,[1] Plaintiffs previously filed consents

8  to become party plaintiffs in *Lang v. DIRECTV*, Case No. 10-1085, pending in the

9  Eastern District of Louisiana. The case was pending as a collective action until the

10  court, on September 3, 2013, granted the parties' joint motion decertifying the

11  class, dismissed the opt-in plaintiffs' claims without prejudice to pursuing the

12  individual claims raised herein, and ordered the statute of limitations for each opt-

13  in plaintiff to continue to be tolled for 60 days from the date of the order. *Lang v.*

14  *DIRECTV*, Case No. 10-1085-NJB (E.D. La.) (Docs. 466, 466-1).

15  **George Schmidt, Jr.**

16    16.   Plaintiff George Schmidt, Jr., is an individual residing in the state of

17  Minnesota. Between approximately August 2010 and January 2012, George

18  Schmidt, Jr., routinely worked more than 40 hours per week as a technician for

19  DIRECTV, and DirectSat, and was unlawfully deprived of overtime compensation.

20    17.   In fact, George Schmidt, Jr. spent in excess of 60 hours per week

21  performing tasks for the benefit of Defendants, many unpaid.

22    18.   Defendants' employment policies and practices detailed herein (*i.e.*,

23  imposing "chargebacks," failing to compensate George Schmidt, Jr. for all hours

24  worked, and failing to reimburse George Schmidt, Jr.'s necessary business

25

26

27  ───────────────
[1] Tanner Porisch did not file a consent in the *Lang v. DIRECTV* litigation.

28

COMPLAINT

1   expenses) resulted in George Schmidt, Jr. being routinely subjected to working at

2   an effective wage rate of less than the applicable minimum wage.

3       **Timothy Hanggi**

4       19.   Plaintiff Timothy Hanggi is an individual residing in the state of

5   Minnesota. Between August, 2009 and February, 2012, Timothy Hanggi routinely

6   worked more than 40 hours per week as a technician for DIRECTV, and DirectSat,

7   and was unlawfully deprived of overtime compensation.

8       20.   In fact, Timothy Hanggi spent approximately 60 hours per week

9   performing tasks for the benefit of Defendants, many unpaid.

10      21.   Defendants' employment policies and practices detailed herein (*i.e.*,

11   imposing "chargebacks," failing to compensate Timothy Hanggi for all hours

12   worked, and failing to reimburse Timothy Hanggi's necessary business expenses)

13   resulted in Timothy Hanggi being routinely subjected to working at an effective

14   wage rate of less than the applicable minimum wage.

15      **Dan Benjegerdes**

16      22.   Plaintiff Dan Benjegerdes is an individual residing in the state of

17   Minnesota. Between approximately May, 2009, to September, 2010, Dan

18   Benjegerdes routinely worked more than 40 hours per week as a technician for

19   DIRECTV, and DirectSat, and was unlawfully deprived of overtime compensation.

20      23.   In fact, Dan Benjegerdes spent in excess of 60 hours per week

21   performing tasks for the benefit of Defendants, many unpaid.

22      24.   Defendants' employment policies and practices detailed herein, (*i.e.*,

23   failing to compensate Dan Benjegerdes for all hours worked and failing to

24   reimburse Dan Benjegerdes' necessary business expenses) resulted in Dan

25   Benjegerdes being routinely subjected to working at an effective wage rate of less

26   than the applicable minimum wage.

27

28

COMPLAINT

**Robert Kiekbusch, Jr.**

25.    Plaintiff Robert Kiekbusch, Jr., is an individual residing in the state of Minnesota. Between approximately 2008 and 2012, Robert Kiekbusch, Jr., routinely worked more than 40 hours per week as a technician for DIRECTV, and DirectSat, and was unlawfully deprived of overtime compensation.

26.    In fact, Robert Kiekbusch, Jr. spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

27.    Defendants' employment policies and practices detailed herein (*i.e.*, failing to compensate Robert Kiekbusch, Jr. for all hours worked and failing to reimburse Robert Kiekbusch, Jr.'s necessary business expenses) resulted in Robert Kiekbusch, Jr. being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

**James Nord**

28.    Plaintiff James Nord is an individual residing in the state of Minnesota. Between approximately January, 2010 and July, 2010, James Nord routinely worked more than 40 hours per week as a technician for DIRECTV, and DirectSat, and was unlawfully deprived of overtime compensation.

29.    In fact, James Nord spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

30.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate James Nord for all hours worked, and failing to reimburse James Nord's necessary business expenses) resulted in James Nord being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

**Mitchell Finwall**

31.    Plaintiff Mitchell Finwall is an individual residing in the state of Minnesota. Between approximately 2005 and 2013, Mitchell Finwall routinely

6

1   worked more than 40 hours per week as a technician for DIRECTV, and DirectSat,

2   and was unlawfully deprived of overtime compensation.

3       32.   In fact, Mitchell Finwall spent in excess of 60 hours per week

4   performing tasks for the benefit of Defendants, many unpaid.

5       33.   Defendants' employment policies and practices detailed herein (*i.e.*,

6   imposing "chargebacks," failing to compensate Mitchell Finwall for all hours

7   worked, and failing to reimburse Mitchell Finwall's necessary business expenses)

8   resulted in Mitchell Finwall being routinely subjected to working at an effective

9   wage rate of less than the applicable minimum wage.

10   **Dylan Monroe**

11      34.   Plaintiff Dylan Monroe is an individual residing in the state of

12   Minnesota. Between approximately May, 2010 and February, 2012, Dylan Monroe

13   routinely worked more than 40 hours per week as a technician for DIRECTV, and

14   DirectSat, and was unlawfully deprived of overtime compensation.

15      35.   In fact, Dylan Monroe spent in excess of 60 hours per week

16   performing tasks for the benefit of Defendants, many unpaid.

17      36.   Defendants' employment policies and practices detailed herein (*i.e.*,

18   imposing "chargebacks," failing to compensate Dylan Monroe for all hours

19   worked, and failing to reimburse Dylan Monroe's necessary business expenses)

20   resulted in Dylan Monroe being routinely subjected to working at an effective

21   wage rate of less than the applicable minimum wage.

22   **John Koziol**

23      37.   Plaintiff John Koziol is an individual residing in the state of

24   Minnesota. Between approximately January, 2010 and July, 2012, John Koziol

25   routinely worked more than 40 hours per week as a technician for DIRECTV, and

26   DirectSat, and was unlawfully deprived of overtime compensation.

27

28

7

1      38.   In fact, John Koziol spent approximately 55 hours per week
2 performing tasks for the benefit of Defendants, many unpaid.

3      39.   Defendants' employment policies and practices detailed herein, (*i.e.*,
4 failing to compensate John Koziol for all hours worked, and failing to reimburse
5 John Koziol's necessary business expenses) resulted in John Koziol being
6 routinely subjected to working at an effective wage rate of less than the applicable
7 minimum wage.

8     **Lawrence Klimek**

9      40.   Plaintiff Lawrence Klimek is an individual residing in the state of
10 Minnesota. From between January, 2010, and July, 2010, Lawrence Klimek
11 routinely worked more than 40 hours per week as a technician for DIRECTV, and
12 DirectSat, and was unlawfully deprived of overtime compensation.

13      41.   In fact, Lawrence Klimek spent approximately 50 hours per week
14 performing tasks for the benefit of Defendants, many unpaid.

15      42.   Defendants' employment policies and practices detailed herein (*i.e.*,
16 imposing "chargebacks," failing to compensate Lawrence Klimek for all hours
17 worked, and failing to reimburse Lawrence Klimek's necessary business expenses)
18 resulted in Lawrence Klimek being routinely subjected to working at an effective
19 wage rate of less than the applicable minimum wage.

20     **Tanner Porisch**

21      43.   Plaintiff Tanner Porisch is an individual residing in the state of
22 Minnesota. Between approximately August, 2009 and September, 2013, Tanner
23 Porisch, routinely worked more than 40 hours per week as a technician for
24 DIRECTV, and DirectSat, and was unlawfully deprived of overtime compensation.

25      44.   In fact, Tanner Porisch spent in excess of 60 hours per week
26 performing tasks for the benefit of Defendants, many unpaid.

27

28

45.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Tanner Porisch for all hours worked, and failing to reimburse Tanner Porisch's necessary business expenses) resulted in Tanner Porisch being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

**Neill Jerry**

46.    Plaintiff Neill Jerry is an individual residing in the state of Minnesota. Between approximately September, 2008 and August, 2010, Neill Jerry, routinely worked more than 40 hours per week as a technician for DIRECTV, and DirectSat, and was unlawfully deprived of overtime compensation.

47.    In fact, Neill Jerry spent in excess of 60 hours per week performing tasks for the benefit of Defendants, many unpaid.

48.    Defendants' employment policies and practices detailed herein (*i.e.*, imposing "chargebacks," failing to compensate Neill Jerry for all hours worked, and failing to reimburse Neill Jerry's necessary business expenses) resulted in Neill Jerry being routinely subjected to working at an effective wage rate of less than the applicable minimum wage.

## GENERAL ALLEGATIONS

49.    Defendants are, and were at all times relevant herein, in the business of, among other things, providing satellite television service to businesses and consumers. Installation and repair of satellite dishes, receivers, and related equipment is an integral part of DIRECTV's business.

50.    Plaintiffs were jointly employed by Defendants as technicians.

51.    Plaintiffs' principal job duty as technicians is or was to install and repair DIRECTV satellite television service.

52.    Plaintiffs typically started their workdays after receiving daily work schedules assigned through DIRECTV's dispatching systems. DIRECTV used a

9

database program known as SIEBEL to coordinate the assignment of particular work orders to technicians using each technician's unique "Tech ID Number."

53.     After receiving their daily work schedules, Plaintiffs typically called the customer contact for each of their assigned jobs to confirm the timeframe within which the technician expected to arrive at the customer's home. Plaintiffs then traveled to their first assigned job and thereafter continued to complete the jobs assigned by Defendants in the proscribed order on the daily work schedule. Upon arriving at each job site, Plaintiffs were required to check-in via telephone with DIRECTV via its dispatching system. At the end of an assigned job, Plaintiffs were required to report to DIRECTV that the installation was complete and, thereafter, worked directly with DIRECTV employees to activate the customer's service.

54.     When performing DIRECTV's work, Plaintiffs were required by Defendants to wear a uniform with DIRECTV insignia on it. Additionally, Plaintiffs were required to display DIRECTV insignia on vehicles driven to customers' homes for installations. Plaintiffs were required to purchase these uniforms and insignia, typically from Defendants.

55.     Plaintiffs were not paid for all hours they worked for Defendants. Rather, they were paid on a per-task (a/k/a piece rate) basis for satisfactorily completing a DIRECTV-approved satellite installation. There was no contract, memorandum, or other document between Plaintiffs and Defendants memorializing or explaining this pay system.

56.     In addition to the certain tasks Defendants designated as compensable, Plaintiffs performed other work each week during the relevant time period for Defendants, such as assembling satellite dishes, driving to and between job assignments, reviewing and receiving schedules, calling customers to confirm installations, obtaining required supplies, attending required meetings, assisting

COMPLAINT

1   other technicians with installations, performing required customer educations,

2   contacting DIRECTV to report in or activate service, working on installations that

3   were not completed, and working on "rollback" installations where Plaintiffs had

4   to return and perform additional work on installations for which they had already

5   been paid.

6          57.   Plaintiffs were not paid for these integral and indispensable tasks that

7   were necessary to their principal activity of installing and repairing DIRECTV

8   satellite television service.

9          58.   Plaintiffs routinely worked more than 40 hours per week for

10  Defendants, as alleged in more detail previously.

11         59.   Defendants did not pay Plaintiffs' wages free and clear. Rather,

12  Plaintiffs were subjected to "chargebacks" wherein Defendants would deduct

13  amounts from Plaintiffs' pay if there were problems with an installation up to 90

14  days after the customer's service was activated. The chargeback would occur for a

15  variety of reasons, many of which were out of Plaintiffs' control.

16         60.   DirectSat has records that should allow a more precise calculation of

17  the amounts of the chargebacks taken out of Plaintiffs' pay.

18         61.   In addition to chargebacks, Plaintiffs were also required to purchase

19  supplies necessary to perform installations, such as screws, poles, concrete, and

20  cables.

21         62.   The required purchase of these supplies for Defendants' financial

22  benefit reduced Plaintiffs' wages, including overtime pay.

23         63.   Plaintiffs were not paid an overtime premium for work done beyond

24  40 hours in a given workweek.

25         64.   Defendants' policy and practice of imposing "chargebacks," failing to

26  compensate Plaintiffs for all hours worked, and failing to reimburse Plaintiffs'

27

28

COMPLAINT

1   necessary business expenses resulted in Plaintiffs being routinely subjected to
2   working at an effective wage rate of less than the applicable minimum wage.

3   **Defendants Are Joint Employers of Plaintiffs**

4   65.   DIRECTV exerted significant control over DirectSat and Plaintiffs
5   regarding the essential terms and conditions of Plaintiffs' employment.

6   66.   DirectSat was merely a "middle man" or "straw man" through which
7   DIRECTV exerted control over Plaintiffs.

8   67.   Although hiring was generally done at the DirectSat's level,
9   DIRECTV controlled the details of Plaintiffs' day-to-day work.

10   68.   DIRECTV, through Provider Defendant, exercised significant control
11   over Plaintiffs' daily work lives, including, but not limited to, control over what
12   work Plaintiffs performed, where that work was performed, when that work was
13   performed, and how that work was performed.

14   69.   DIRECTV, through DirectSat, also determined whether Plaintiffs'
15   work merited compensation, including setting the rate of pay, the method of
16   payment, whether chargebacks or rollbacks would be imposed and for how much.
17   Specifically, DIRECTV determined the rate of pay and the DirectSat administered
18   payroll and provided Plaintiffs with their paychecks.

19   70.   DIRECTV, through the DirectSat, exerted control over Plaintiffs
20   sufficient to establish that they jointly employed Plaintiffs. DIRECTV and
21   DirectSat constitute joint employers subject to liability under the FLSA and state
22   law.

23   71.   DIRECTV customers considered Plaintiffs to be employees of
24   DIRECTV.

25   72.   DIRECTV promulgates detailed instructions for how installations are
26   to be completed. Plaintiffs received these instructions and performed the work as
27
28

12

1    DIRECTV required. Plaintiffs were not given meaningful discretion in how they

2    performed installations.

3        73.    DIRECTV publishes training materials that technicians such as

4    Plaintiffs are required to review.

5        74.    DIRECTV requires that all technicians obtain a certification from the

6    Satellite Broadcasting & Communications Association ("SBCA") before that

7    technician may be assigned DIRECTV work orders. This requirement allows

8    DIRECTV to mandate certain training for all technicians.

9        75.    DIRECTV utilizes a network of quality control personnel and field

10   managers to oversee the work performed by Plaintiffs.

11       76.    DIRECTV and DirectSat's quality control personnel reviewed

12   Plaintiffs' work, and Plaintiffs were subject to chargebacks and/or rollbacks based

13   on those reviews.

14       77.    While DIRECTV may not maintain Plaintiffs' employment-related

15   documents at its corporate office, DIRECTV contractually requires its middle men

16   (like DirectSat) to provide DIRECTV the right to inspect and/or obtain copies of

17   Plaintiffs' personnel files and employment-related documents.

18       78.    Defendants are each engaged in interstate commerce and, upon

19   information and belief, Defendants each gross more than Five Hundred Thousand

20   Dollars in revenue per year.

21       79.    The net effect of Defendants' policies and practices, instituted by

22   DIRECTV and administered by DirectSat, is that Defendants willfully fail to pay

23   minimum wage and overtime compensation to Plaintiffs, and willfully fail to keep

24   accurate time records in order to save payroll costs. Defendants enjoy ill-gained

25   profits at the expense of their technicians, including Plaintiffs.

26

27

28

## COUNT I

### Violation of the Fair Labor Standards Act of 1938

*By each Plaintiff individually against Plaintiff's previously identified joint-employer-Defendant(s)*

80. Plaintiffs re-allege all allegations set forth above.

81. At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

82. The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

83. The FLSA also regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a).

84. Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

85. Defendants violated the FLSA by failing to pay all minimum wage and overtime wages due to Plaintiffs, failing to properly calculate Plaintiffs' regular rate of pay for determining the overtime premium pay owed, and improperly deducting money from Plaintiffs' pay.

86. Plaintiffs are entitled to damages equal to the mandated minimum wage and overtime premium pay within the three years preceding the filing their consent to join forms in the *Lang* litigation, or from the filing of this complaint for

COMPLAINT

the Plaintiff(s) who did not file a consent to join n *Lang*, plus periods of equitable tolling, because Defendants acted willfully and knew or showed reckless disregard in their violation of the FLSA.

87.   Pursuant to Defendants' policies and practices, Defendants willfully violated the FLSA by refusing and failing to pay Plaintiffs overtime and minimum wages. In the course of perpetrating these unlawful practices, Defendants willfully failed to keep accurate records of all hours worked by, compensation paid to, and expenses incurred by Plaintiffs.

88.   Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA. As a result thereof, Plaintiffs are each entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants acted in good faith in failing to pay Plaintiffs minimum wage and overtime compensation, Plaintiffs are each entitled to an award of prejudgment interest at the applicable legal rate.

89.   As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld from Plaintiffs by Defendants. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

COMPLAINT

**COUNT II**

**Willful Misrepresentation of Employment Relationship**

(Minn. Stat. Ann. § 181.722)

*By each Plaintiff individually against Plaintiff's previously identified joint-employer-Defendant(s)*

90.     Plaintiffs re-allege the allegations set forth above.

91.     As satellite system installers, Plaintiffs are and were at all times subject to the definition contained in Minn. Stat. Ann. § 179.254.

92.     Under Minn. Stat. Ann. § 181.722, Defendants are prohibited from misrepresenting the nature of their employment relationship with Plaintiffs by, among other things, misclassifying Plaintiffs as independent contractors.

93.     Plaintiffs performed work for remuneration paid by Defendants under the control and direction of DIRECTV through the DirectSat as alleged herein.

94.     Plaintiffs' services were never outside the usual course of services that Defendants provide. Plaintiffs were never engaged in any independently established trade or business in connection with their work for Defendants. Plaintiffs were never sole proprietors or part of a partnership in connection with their work for Defendants. Defendants nonetheless improperly treated Plaintiffs as independent contractors and as a result, Defendants paid Plaintiffs straight pay without taking the required payroll deductions or making the required contributions on their behalf for their work.

95.     As a direct and proximate result of being misclassified, Plaintiffs have suffered damages.

96.     By failing to identify and classify Plaintiffs properly as employees, Defendants violated Minn. Stat. Ann. § 181.722.

97.     Pursuant to Minn. Stat. Ann. § 181.722(4), Defendants are jointly liable to Plaintiffs for the amount of wages or other compensation lost as a result of

COMPLAINT

1    the misclassification, compensatory damages, attorneys' fees, costs, and
2    disbursements.

3        98.    Plaintiffs request relief as described below and as permitted by law.

4        **WHEREFORE**, Plaintiffs request the Court enter judgment for Plaintiffs
5    and:

6        a.    Award damages for unpaid minimum wages and unpaid overtime
7              wages under 29 U.S.C. § 216(b);

8        b.    Award liquidated damages under 29 U.S.C. § 216(b);

9        c.    Award damages contemplated under Minn. Stat. Ann. § 181.722,
10             including wages or other compensation lost as a result of the
11             misclassification, compensatory damages, and disbursements;

12       d.    Award reasonable attorney's fees under the Fair Labor Standards Act
13             and Minnesota law;

14       e.    Award pre-judgment interest;

15       f.    Award costs of suit under 29 U.S.C. § 216(b) and Minnesota law; and

16       g.    Grant any further relief that the Court may deem just and equitable.

17   Dated: November 1, 2013              Respectfully submitted,

18                                        **STUEVE SIEGEL HANSON LLP**

19

20                                        By:

21                                        Jason S. Hartley, CA Bar No. 192514
                                          500 West C Street, Suite 1750
22                                        San Diego, California 92101
                                          Telephone:  619-400-5822
23                                        Facsimile:   619-400-5832
24                                        Email: hartley@stuevesiegel.com

25

26

27

28

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

George A. Hanson, (*Pro Hac Vice*
*Forthcoming*), MO Bar No. 43450
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:  816-714-7100
Facsimile:  816-714-7101
Email:  hanson@stuevesiegel.com

**HEARIN, LLC**
JESSE B. HEARIN, III
La. Bar Roll No. 22422
1009 Carnation Street, Suite E
Slidell, Louisiana 70460
Telephone:  985-639-3377

18

COMPLAINT